**UNITED STATES of America,**

v.

**Antonio John PALUMBO, II, Appellant.**

**No. 80–1312.**

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1980.

Decided Jan. 19, 1981.

Rehearing Denied March 13, 1981.

Michael Young (argued), Goldberger, Feldman, Dubin & Young, New York City, for appellant.

Robert J. Cindrich, U. S. Atty., Paul J. Brysh (argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The appellant, Antonio John Palumbo II, was convicted on one count of conspiracy to possess and distribute cocaine, and on other counts relating to the possession and distribution of counterfeit bills. Although the indictment charges that Palumbo conspired with other individuals in the distribution of cocaine and counterfeit bills, he was the only person tried below. From our review of the record, this appeal raises two related questions. First, whether the district court properly admitted into evidence several grams of cocaine that was found in a search of an unindicted co-conspirator; and

second, whether the court properly admitted the hearsay testimony of a police officer who stated that the unindicted co-conspirator had identified Palumbo as the source of the cocaine found in her possession. Because we find that this hearsay testimony was inadmissable and that, absent this testimony, there was no foundation linking the cocaine to the defendant, we reverse Palumbo's cocaine conviction, although we affirm his convictions on all other counts.

### I.

Palumbo was indicted on September 6, 1979 for the following offenses: conspiracy to possess and pass counterfeit bills, in violation of 18 U.S.C. § 371 (Count I); conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count II); possession of counterfeit bills, in violation of 18 U.S.C. §§ 2 & 472 (Count III); transfer and delivery of counterfeit bills, in violation of 18 U.S.C. §§ 2, 472, & 473 (Counts IV, V, and VI); and possession and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts VII and VIII).[1]

At trial, much of the government's case was based on the testimony of an unindicted co-conspirator of Palumbo, Mary Jane Pfaff. Pfaff testified that in early August of 1978 she entered into an agreement with John Crosson to receive $5,000 in counterfeit bills, which she was to exchange for real currency. She returned part of this currency, per their agreement, to Palumbo a week later. Palumbo and she agreed that he would supply her with counterfeit bills in the future, which she would exchange for real money and return in part to Palumbo. They engaged in several of these transactions during the fall of 1978.

Pfaff also stated that sometime between August, 1978 and October, 1978 she asked Palumbo to obtain some cocaine for her. According to Pfaff, he agreed, and later sold her one ounce of cocaine for $1,800 on two separate occasions. Pfaff stated that she resold some of the cocaine and retained some for her own use.

The principal problem raised in this appeal concerns several evidentiary rulings made by the trial court relating to the 12.7 grams of cocaine found in Pfaff's possession (along with $10,000 in counterfeit bills) when she was arrested on October 27, 1978. Pfaff told the arresting officer and later the grand jury that she had received the cocaine from Palumbo. At trial, however, Pfaff said she could not recall where she had gotten the cocaine. The court permitted the government, over defense objections, to remind her in front of the jury of her earlier identification of Palumbo in testimony before the grand jury. Pfaff continued to maintain that she could not recall the source. The court was not requested to

---

1.  These sections provide as follows:

    21 U.S.C. § 846. Attempt and conspiracy. Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

    18 U.S.C. § 472. Uttering counterfeit obligations or securities.

    Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

    18 U.S.C. § 473. Dealing in counterfeit obligations or securities.

    Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

    21 U.S.C. § 841. Prohibited acts A—Unlawful Acts

    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

    (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

give any instructions limiting the grand jury testimony to the purpose of refreshing recollection or impeachment. The government, however, made no attempt to introduce the prior statement as substantive evidence, even though it later argued in summation that the grand jury statement showed Palumbo supplied the drug. The district court also permitted the police officer who arrested Pfaff with the cocaine to testify, again over defendant's objections, that Pfaff had identified Palumbo as the source of the cocaine. The court did not explain the basis of its decision to admit this statement which occurred when defendant was not present. Later the court, once again over defendant's objection, admitted the cocaine seized from Pfaff into evidence and permitted it to be passed among the jurors.

■ The jury convicted Palumbo on all of the Counts relating to the possession and distribution of counterfeit bills (Counts I, III, IV, V, and VI) and also on the charge of conspiracy to possess cocaine (Count II). It acquitted him of the Count relating to the distribution of cocaine (Count VIII). The Count relating to *possession* of cocaine with intent to distribute (Count VII) was dismissed during trial. The court imposed consecutive two year sentences for the two conspiracy convictions, a one year consecutive sentence for the possession conviction, and concurrent two year terms for the oth-

er three counts. The net result of the sentence was either a 5 or 6 year prison term.[2] On appeal, Palumbo has asserted various errors by the trial judge. Although we find that his challenges to his conviction on the counterfeiting counts lack merit,[3] we conclude that his challenge to the introduction of cocaine into evidence and certain related testimony is correct, and requires a reversal of his conviction for conspiracy to distribute that drug.

II.

There are two possible grounds under which it might be argued that the cocaine could have been admitted into evidence. We find neither rationale sufficient justification for its admission.

■ The first, which the district court relied on, is that the cocaine seized from Pfaff was admissible as evidence of a conspiracy between Pfaff and Palumbo to distribute cocaine, even though Pfaff may not have received that particular cocaine from the defendant. The trial court stated:

I am going to overrule the objection [to the admission of the cocaine] because I think part of the testimony here has been that there has been an agreement to distribute cocaine and that the Defendant delivered some cocaine to Pfaff, and, therefore, the cocaine, whether or not it agrees with the quantity delivered by the Defendant to Pfaff, is in part corroborat-

2. In their briefs both parties state that the court imposed a 5 year sentence, although arguably a literal reading of the judgment could indicate that it was a 6 year sentence. This issue, however, is left to the trial judge upon the remand.

3. First, appellant claims that the trial judge's jury instructions on accomplice liability were in error. Palumbo did not object to this charge below, however, and under Rule 30, Fed.R. Crim.P., has waived this objection. Second, appellant challenges the refusal of the district court judge to permit questioning of Pfaff concerning a suicide attempt seven years earlier and her admission into a mental hospital during the weekend of the trial. The trial judge allowed extensive cross-examination of Pfaff, however, and any limitation he placed on the examination was well within his discretion. *See United States v. Slade*, 627 F.2d 293 (D.C.

Cir.1980) (upholding district court's limitation on cross-examination of prosecution witness regarding psychiatric history because witness had already been seriously impeached). Third, the appellant claims that the district court judge should have interrogated the jurors individually to determine whether they had learned of newspaper publicity about the trial. The appellant, however, failed to raise objection to the procedure ultimately used by the trial court to interrogate the jury. *See United States v. Giacalone*, 574 F.2d 328, 336 (6th Cir. 1978) (failure of appellant to raise objection during trial to judge's failure to interrogate jurors about trial publicity waived right to challenge procedure on appeal). Appellant's two other claims—(1) that no overt acts were proved in furtherance of the conspiracy and (2) the two conspiracies were one and the same—are without any merit.

ing evidence of Pfaff's testimony with respect to the agreement to distribute, the conspiracy count. Objection will be overruled.

Transcript at 507. This rationale is impermissible. The mere fact that a co-conspirator of the defendant possessed cocaine cannot be used to implicate the defendant for possession or conspiracy to possess cocaine if, as in this case, there is *no* evidentiary connection made between the drug possessed by the co-conspirator and the defendant in the conspiracy in issue. *See United States v. Falley*, 489 F.2d 33, 37–38 (2d Cir. 1973). This precaution is certainly necessary where the witness, as here, has admitted that she was a frequent user of drugs, received drugs from various individuals, and does not recall whether she got the drugs in issue from or through the defendant.

■ The government argues on appeal, alternatively, that the district court properly admitted the cocaine into evidence because there was testimony from the arresting officer that Pfaff had identified Palumbo as the source. We conclude, however, that the district court should not have admitted this testimony because it was inadmissible hearsay. Although the trial judge did not offer a reason for his ruling, the government has suggested at oral argument that the statement came within the exception to the hearsay rule for declarations against interest, pursuant to Rule 804(b)(3) Fed.R.Evid. We disagree.

Rule 804(b)(3) states in pertinent part: *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(3) *Statement against interest.* A statement ... so far tended to subject him to civil or criminal liability, ... that a reasonable man in his position would not have made the statement unless he believed it to be true.

The Rule defines "unavailable as a witness" as follows:

(A) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant—

\* \* \* \* \* \*

(3) testifies to a lack of *memory of the* subject matter of his statement ...

\* \* \* \* \* \*

While it is true that Pfaff was "unavailable" within the meaning of the Rule, the reliability of her statement is less clear. The exception for declarations against interest "rests upon the assumption that one does not make statements that would damage himself unless the statement is true." *United States v. Bailey*, 581 F.2d 341, 345–46 & n.4 (3d Cir. 1978) (citing 5 *Wigmore on Evidence* § 1455 (Chadbourne Rev. 1974)). The conclusion that a "reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true," often requires, therefore, a sensitive analysis of the circumstances in which the statement was made and the precise nature of the statement. The Advisory Committee on the Federal Rules of Evidence has warned, in particular, that the courts should exercise special caution when the statement was made by a defendant in police custody and against a co-defendant. "Whether a statement is in fact against interest," the committee observed,

must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest.

Advisory Committee Note to Rule 804 *reprinted in* 4 J. Weinstein and M. Berger, *Weinstein's Evidence*, at 804–24. Thus, this and other courts have found statements implicating a co-defendant and made in police custody to be inadmissible under the rule. *See, e. g., United States v. Love*, 592 F.2d 1022, 1025 (8th Cir. 1979); *United States v. Bailey*, 581 F.2d at 345–46 & n.4.

■ When viewing the totality of "circumstances of [this] case," we conclude that Pfaff's statement did not fall within the

exception for declaration against interest. Pfaff's identification of Palumbo as the source of the cocaine only occurred after the cocaine had already been found on her person by the police. While technically her statement could have been used to support a conspiracy conviction, or as evidence to show her possession was knowing, it is doubtful whether it is the type of statement that "so far tended to subject [Pfaff] to . . . criminal liability that a reasonable person in [her] position would not have made the statement unless [s]he believed it to be true." The legal implications of her statement may well have been unknown to her. More importantly, the statement was made while Pfaff was in police custody in response to police questioning. There is a very real danger that the motivation for the revelation may not have been to further truth, but rather to "curry favor with the authorities." On these grounds, although the issue is not free from doubt, we hold that it was error to admit the testimony.[5]

We cannot discern, and the government has not suggested, any other grounds for the admission of the statement. The government concedes, as it must, that the testimony of Pfaff to the grand jury could not have supported the admission of the cocaine into evidence. The government made no attempt to introduce the testimony as substantive evidence during Pfaff's cross examination or at any other point.[6] Thus, we conclude that there was no properly

admitted evidence to support the introduction of the cocaine. Because the prejudicial impact from the admission of the cocaine clearly outweighed its probative value under Rule 403, F.R.Evid., we hold that it was a clear abuse of discretion to admit the evidence.

■ Finally, it remains to be considered whether the admission of the cocaine into evidence was an error of sufficient magnitude to warrant a reversal of the conviction for conspiracy to possess cocaine. We believe that it was. The admission of the drug into evidence indicated a direct connection between the defendant and the drug. The fact that this cocaine was actually permitted to be passed among the jurors adds to its prejudicial impact. Moreover, in this case, hearsay testimony providing this link was impermissibly commented on by the prosecutor during cross examination and in his closing without an accompanying instruction by the trial court limiting its use to impeachment purposes. In these circumstances, "[t]he rule requires 'an explicit admonition to the jury by the court at the time a prior inconsistent statement is admitted, and also an instruction at the close of trial, that the statement can be considered only as bearing on credibility.' " *United States v. Ragghianti*, 560 F.2d 1376, 1381 (9th Cir. 1977) (*quoting Bartley v. United States*, 319 F.2d 717, 719 (D.C.Cir. 1963)). Other courts have found the intro-

---

5. We are also in agreement with Judge Adams' scholarly concurring opinion which illuminates many of the subtleties of the rule and its application to this case.

6. We cannot hold on appeal that this prior statement would have been admissible under Rule 801(d)(1)(A), Fed.R.Evid. as a prior inconsistent statement. The Rule states:

   A statement is not hearsay if—
   (1) *Prior statement of witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
     (A) Inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial hearing, or other proceeding, or in a deposition . . .

   Pfaff's assertion that she could not recall where she obtained the cocaine was not *necessarily* inconsistent with her prior statement that she

had received the cocaine from Palumbo, as required by the Rule. Several courts have recognized that lack of memory as to the substance of a prior statement may not be inconsistent in certain circumstances with the prior statement. *See United States v. Rogers*, 549 F.2d 490, 496 (8th Cir. 1976); *United States v. Insana*, 423 F.2d 1165, 1170 (2d Cir.), *cert. denied*, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). As Judge Weinstein has written in his treatise:

   [I]t would seem that the prior statement should not be included under 801(d)(1)(A) if the judge finds that the witness genuinely cannot remember, and the period of amnesia or forgetfulness is crucial as regards the facts in issue.

4 *Weinstein's Evidence* § 801(d)(1)(A)[04], 801–98.

duction into evidence of a drug not linked to the defendant constituted prejudicial error requiring reversal of the drug related conviction. *See United States v. Falley*, 489 F.2d at 37–38. In this case, where a hearsay statement providing the link was read to the jury with no limiting instruction, and the cocaine was admitted into evidence, there was prejudicial error requiring a reversal of appellants' conviction for conspiracy to possess and distribute cocaine.

### III.

We therefore will vacate appellant's conviction on Count II for conspiracy to distribute cocaine, affirm his conviction on all other counts, and remand to the district court judge to consider the appropriate sentence.[7]

ADAMS, Circuit Judge, concurring.

Although I agree with the majority that Pfaff's identification of Palumbo as the source of the cocaine she carried at the time of her arrest was not admissible under Federal Rule of Evidence 804(b)(3), I write separately to emphasize the significance of today's decision, and to elucidate the reasoning that leads me to the same conclusion reached by the majority.

Implicit in the opinion for the Court is the assumption that Rule 804(b)(3) may be invoked to admit declarations against interest by a third party which inculpate the accused. Although we are not the first federal court of appeals to employ Rule

804(b)(3) in this manner,[1] commentators have cautioned against using the declaration against interest exception to allow evidence harmful to a criminal defendant.[2] While I believe that this application of the rule is proper, some comment on why this result is justified appears appropriate.

As originally drafted by the Advisory Committee, Rule 804(b)(3) precluded the admission of inculpatory statements. The final sentence of the draft rule provided: "This [exception] does not include a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused." Proposed Fed.R. Evid. 804(b)(4) (1969 draft), 46 F.R.D. 161, 378 (1969) (later renumbered as Fed.R.Evid. 804(b)(3)). While this sentence had been deleted by the time the Supreme Court promulgated the official Advisory Committee Draft of the Federal Rules of Evidence in 1972, *see* 56 F.R.D. 183, 321 (1972), the House of Representatives reinserted the exclusion of inculpatory statements, *see* House Committee on the Judiciary, Report on Federal Rules of Evidence, H.R.Rep.No. 93–650, 93d Cong., 1st Sess. 16 (1973), U.S. Code Cong. & Admin.News 1974, p. 7051. This restoration was of short duration, however, as the Senate rejected the House's reference to inculpatory statements, *see* Senate Committee on the Judiciary, Report on Federal Rules of Evidence, S.Rep.No.93–1277, 93d Cong., 2d Sess. 21–22 (1974), and it was the Senate's position which was adopted by the conference committee, *see*

---

**7.** We do not find that the improper admission of evidence and testimony relating to Count II was sufficiently prejudicial to require a new trial on the other counts.

**1.** Other cases in which the admissibility of inculpatory declarations against interest was tested by Rule 804(b)(3) include *United States v. Garris*, 616 F.2d 626 (2d Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980); *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978); *United States v. Lilley*, 581 F.2d 182 (8th Cir. 1978). In each of these cases, however, the court assumed without further explanation that inculpatory statements fall within the ambit of Rule 804(b)(3). In addition to the cited cases, at least two courts of appeals have indicated in dictum that a

statement against penal interest may be used against, as well as in favor of, an accused. *See United States v. Barrett*, 539 F.2d 244, 250 (1st Cir. 1976); *United States v. Hyde*, 574 F.2d 856, 863 (5th Cir. 1978).

**2.** *See* Report, New Jersey Supreme Court, Committee on Evidence 170–71 (1963) ("declarations against the penal interest of a declarant should be *inadmissible against another in the* criminal prosecution of the latter, particularly if made while the declarant was in police custody"); J. Weinstein & M. Berger, Weinstein's Evidence ¶ 804(b)(3)[03], at 804–113 (1979) ("exclusion should always result when a statement against penal interest is offered *against* an accused").

Committee on Conference, Report on Federal Rules of Evidence, H.R.Rep.No.93–1597, 93d Cong. 2d Sess. 12 (1974).[3]

Ultimate rejection of the sentence forbidding admission of inculpatory declarations against interest might suggest a Congressional intent that such declarations should be admitted when the requirements of Rule 804(b)(3) are satisfied. But the reasons for the Senate's omission of the sentence cast some doubt on such a spacious interpretation:

> The House amended this exception to add a sentence making inadmissible a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused. The sentence was added to codify the constitutional principle announced in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* held that the admission of the extrajudicial hearsay statement of one codefendant inculpating a second codefendant violated the confrontation clause of the sixth amendment.

> The committee decided to delete this provision because the basic approach of the rules is to avoid codifying, or attempting to codify, constitutional evidentiary principles, such as the fifth amendment's right against self-incrimination and, here, the sixth amendment's right of confrontation. Codification of a constitutional principle is unnecessary and, where the principle is under development, often unwise.

S.Rep.No.93–1277, *supra*, at 21–22, U.S. Code Cong. & Admin.News 1974, p. 7068.

The dispute between the Senate and the House thus arose from differing judgments concerning the propriety of codifying evolving evidentiary principles based on constitutional considerations. Congress decided ultimately that limitations on admissibility mandated by the Confrontation Clause should be left to the courts to propound and refine. There is no indication, however, of a clash of opinion within the Congress about whether traditional justifications for hearsay exceptions apply to inculpatory declarations against interest. Significantly, no Congressional committee suggested that inculpatory declarations are insufficiently reliable to be included within the Rule 804(b)(3) exception. The legislative history suggests, if anything, the contrary, for if either House had entertained such an opinion, it would have had no need to address the *Bruton* question; unreliability is an adequate—indeed, the historical—reason for treating hearsay statements as inadmissible.[4]

In my view, then, the history of the drafting of Rule 804(b)(3) is not inconsistent with a construction which allows the admission of declarations against interest that inculpate the accused. Since inculpatory declarations by third parties are excluded neither by the history nor by the terms of the Rule, I would suggest that the Rule be interpreted as authorizing their admission, provided, of course, that admission would not abridge the defendant's rights under the Confrontation Clause of the Sixth Amendment.

The Supreme Court has had several occasions to examine the relationship between the Confrontation Clause and the exceptions to the rule against hearsay. *See, e. g.,*

---

**3.** A more elaborate account of the drafting process which produced Rule 804(b)(3) may be found in Comment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest*, 66 Calif.L.Rev. 1189, 1191–98 (1978).

**4.** *See* Comment, *supra* note 3, at 1198 n.50 (Congress would not have had to deal with the *Bruton* question if it had intended inculpatory declarations to be outside the scope of Rule 804(b)(3)). For elaboration of the theory that hearsay exceptions are justified for categories

of statement that exhibit guarantees of reliability not shared generally by hearsay evidence, see J. Weinstein & M. Berger, Weinstein's Evidence ¶ 8000[01], at 800–11 (1979); 5 J. Wigmore, Evidence §§ 1420, 1422 (rev. ed. J. Chadbourne 1974). *But see* Note, *The Theoretical Foundation of the Hearsay Rules*, 93 Harv. L.Rev. 1786, 1794–99 (1980) (focus on absolute reliability mistakenly ignores jury's perception of reliability; hearsay should be admitted when absolute reliability exceeds expected error in jury's assessment of reliability).

*Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Most recently, in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court allowed the introduction into evidence of testimony, which had been produced at the preliminary hearing, of a witness who was not present at the subsequent state criminal trial. In the course of its opinion, the Court summarized the limitations imposed by the Confrontation Clause on the exceptions to the hearsay rule. First, the Confrontation Clause normally requires a showing that the hearsay declarant is unavailable. *Id.* at 4877. And then, the hearsay statement "is admissible only if it bears adequate 'indicia of reliability.'" The Court noted that certain hearsay exceptions "rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection,'" *id.* at 4876 (quoting *Mattox v. United States*, 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)), and cited the dying declaration and cross-examined prior-trial testimony as examples, 48 U.S.L.W. at 4876 n.8. With most exceptions, however, the facts surrounding the making of the hearsay statement at issue must be examined in order to ascertain whether they provide a satisfactory indication of the trustworthiness of the statement.

With respect to inculpatory declarations against interest, I believe that admission is proper only when it is demonstrated that "corroborating circumstances clearly indicate the trustworthiness of the statement." [5] When combined with the condi-

tions already written into Rule 804(b)(3), this yields a three-part test for the admissibility of inculpatory declarations against interest: the statement is receivable only if (1) the declarant is unavailable as a witness; (2) the statement is so far contrary to the declarant's pecuniary, proprietary, or penal interest that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the trustworthiness of the statement is corroborated by the attendant circumstances.

In the present case, the first of these prerequisites is satisfied. Rule 804(a)(3) establishes that a witness is "unavailable" if she "testifies to a lack of memory of the subject matter of [her] statement." At Palumbo's trial, Pfaff testified to a lack of memory about the subject matter of her statement, made at the time of her arrest, identifying Palumbo as her source for cocaine. *See California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

The majority concludes that the second precondition of Rule 804(b)(3) is not satisfied, inasmuch as the statement made by Pfaff when arrested was not so contrary to her penal interest that a reasonable person in her situation would not have made the statement unless she believed it to be true. The majority suggests that Pfaff's statement was against Palumbo's interest but not against her own, inasmuch as the police had already found the cocaine in Pfaff's possession and she was merely identifying where she had obtained it.

I am not so convinced as the majority that Pfaff's statement was not against her interest. In *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978), the Fifth Circuit

---

5. This is the standard already furnished by Rule 804(b)(3) for declarations against interest offered to *exculpate* the accused. In this context the corroborating circumstances requirement is not required by the Confrontation Clause, but *stems* instead from apprehension that in the absence of such a provision, criminal defendants could easily procure false confessions by declarants who had disappeared and thus had become unavailable for cross-examination at trial. *See* Note, *Declarations Against Penal Interest: Standards of Admissi-*

*bility Under an Emerging Majority Rule*, 57 B.U.L.Rev. 148, 151 (1976). Since this concern would appear to apply as well to the obtainment of inculpatory declarations, the failure of the Advisory Committee and the Congress to include a corroborating circumstances requirement for inculpatory statements, like the failure expressly to include inculpatory statements within the reach of the Rule, may best be explained by the desire not to codify evolving constitutional principles. *See United States v. Alvarez*, 584 F.2d at 700–01.

considered the admissibility of testimony that an unavailable declarant had identified defendant as the supplier of drugs that the declarant had subsequently furnished the witness. As in the present case, defendant argued that the hearsay statement did not fall within Rule 804(b)(3), since it "did not really contravene the interest of [the defendant]." 584 F.2d at 699. The Court rejected this reasoning. It noted that the "against interest" exception is not limited to a declarant's direct confession of criminal guilt, but applies as well to statements that "tend" to subject the speaker to criminal liability.[6] The court then found that the declarant's remarks "strongly implied his personal participation" in the crimes, and "strengthened the impression that he had an insider's knowledge of the crimes." *Id.* at 700 (quoting *United States v. Barrett*, 539 F.2d 244, 251–52 (1st Cir. 1976)). The statements were thus against the interest of the declarant for purposes of Rule 804(b)(3).

The facts of the present case parallel the situation in *Alvarez*: the witness (FBI Agent Ogilvie) testified that the declarant (Pfaff) had identified the defendant (Palumbo) as the source for illegal substances. As in *Alvarez*, Pfaff's statements would tend to indicate her personal participation in criminal activity and to convey the impression that she had an insider's knowledge of the wrongdoing. By identifying her source, Pfaff was admitting that her possession of the drug was knowing. *See United States v. Bagley*, 537 F.2d 162 (5th Cir. 1976) (inmate's statement that he furnished defendant with heroin held to be against inmate's interest, since it conceded

his knowing possession of heroin). In addition, Pfaff's acknowledgment of Palumbo's role might have suggested that she was involved with him in a conspiracy to possess, or to distribute, cocaine.[7]

Although I conclude that the statement made by Pfaff upon arrest was against her interest, in my view the statement is not supported by sufficient "indicia of reliability" to warrant its admissibility under Rule 804(b)(3). The naming of another as a compatriot will often be accompanied by motivations which undermine the trustworthiness of the assertion. As one commentator has noted:

The invocation of a name may be gratuitous, may be deliberately false in order to gain advantages for the declarant greater than those that would flow from naming a real participant or no one at all, may be a cover for concealment purposes (another kind of "advantage"), or may represent an effort to gain some kind of personal revenge.

Davenport, *The Confrontation Clause and the Coconspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 Harv.L.Rev. 1378, 1396 (1972). The Advisory Committee that drafted Rule 804(b)(3) also recognized these dangers. Its Note to Rule 804 cautions that "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities."

In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court identified several circum-

---

6. *Accord, United States v. Thomas*, 571 F.2d 285, 288–89 (5th Cir. 1978); *United States v. Barrett*, 539 F.2d 244, 251 (1st Cir. 1976); *United States v. Satterfield*, 572 F.2d 687, 691 (9th Cir. 1978).

7. In determining whether a statement is against the speaker's interest for purposes of Rule 804(b)(3), some courts have focused on whether the assertion contained evidence that would prove harmful to the declarant should he ever be tried. *See United States v. Barrett*, 539 F.2d at 251: "Though by no means conclusive, the statement would be important evidence against [the declarant] were he himself on trial. . . .

We cannot say, therefore, that it did not pose the sort of threat to [the declarant's] interest that the hearsay exception contemplates." *See also* Note, *supra* note 4, at 158 ("both declarations that are direct confessions and declarations that merely provide evidence against the declarant sufficiently jeopardize penal interests" to fall within Rule 804(b)(3)). Pfaff's identification of Palumbo might be offered as evidence were she brought to trial, insofar as it tends to establish knowing possession on her part and might support a theory of conspiracy to possess or to distribute cocaine.

stances which provide assurance that proffered hearsay testimony is trustworthy. Although the Court in *Chambers* was presented with a constitutional challenge to the exclusion of evidence rather than a question of admissibility under the Federal rules,[8] the Court's discussion of reliability, while not binding in the present circumstances, may nonetheless assist in evaluating the trustworthiness of the hearsay evidence at issue here.[9]

The evidence excluded by the state courts in *Chambers* consisted of three confessions made by one McDonald to the crime with which Chambers was charged. In concluding that the context in which these admissions were made offered "considerable assurance" of their reliability, the Court observed that "each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred." *Id.* at 300, 93 S.Ct. at 1048. In contrast, Pfaff's purported admission took place only after she had been taken into custody, and may have been prompted by a belief that she would thereby gain favorable treatment from the police or prosecutor. Moreover, her comments were not made spontaneously, but were part of a statement elicited by the arresting officers. *Cf. United States v. Thomas*, 571 F.2d 285, 290 (5th Cir. 1978) (declaration against interest sufficiently corroborated when statement was not elicited by questioning, was facially spontaneous, and was made in the presence of several witnesses). In *Chambers*, the confessions were corroborated by other evidence in the case; McDonald, for instance, had been seen with a gun immediately after the shooting. In the present situation, on the other hand, Pfaff's statement upon arrest was the only evidence on record linking Palumbo to the 12.7 grams of cocaine admitted into evidence.[10]

There also is no indication that Pfaff was aware, at the time she allegedly identified Palumbo as her source for cocaine, that this admission might be against her own interest. Professor Morgan has argued that unless the declarant is aware that her statement tends to subject her to criminal liability, the assumption that the assertion is more reliable than other forms of hearsay is unjustified.[11] Finally, Pfaff's personal history, marked by frequent use of drugs and treatment for psychological disorders, further weakens her trustworthiness.

**8.** The Supreme Court held in *Chambers* that the trial court's exclusion of the hearsay testimony of three witnesses that another person had confessed to the crime for which Chambers stood trial, coupled with the state court's refusal to permit Chambers to cross-examine a key witness, "denied [Chambers] a trial in accord with traditional fundamental standards of due process." 410 U.S. at 302, 93 S.Ct. at 1049. The Court was careful to state, however, that it did not establish, as a matter of constitutional law, that any declaration against interest which tends to exculpate the accused must be admitted in a criminal trial. *Id.* at 299–300, 93 S.Ct. at 1047–1048.

**9.** In determining whether corroborating circumstances clearly indicate the trustworthiness of a third party confession, other federal courts have looked to *Chambers v. Mississippi* for guidance. *See United States v. Oropeza*, 564 F.2d 316, 325 (9th Cir.), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1977); *United States v. Guillette*, 547 F.2d 743, 754 (2d Cir. 1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). *But see* Comment, *supra* note 3, at 1206 n.103 (criticizing this approach).

**10.** The other considerations that influenced the Supreme Court in *Chambers* are less germane to the case at hand. The Court noted that each of McDonald's confessions "was in a very real sense self-incriminatory and unquestionably against interest." 410 U.S. at 301, 93 S.Ct. at 1048. As discussed above, Pfaff's statements upon arrest contravened her penal interest, although probably not as directly and unambiguously as McDonald's confessions that he shot the police officer with whose killing Chambers was charged. The Court in *Chambers* also observed that McDonald was present in the courtroom during trial, and questions about the truthfulness of his extrajudicial statements could have been resolved by cross-examining him. In the present case, Pfaff was unavailable within the meaning of Rule 804(a)(3).

**11.** *See* Morgan, *Declarations Against Interest*, 5 Vand.L.Rev. 451, 477 (1952). *See also* 5 J. Wigmore, *supra* note 4, § 1461; S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 603 ("Whenever a statement against interest is offered, it is the job of the Trial Judge to determine whether the declarant was under the impression that the statement was against his interest at the time he made it.").

Accordingly, I conclude that the hearsay testimony concerning Pfaff's identification of Palumbo was improperly admitted. That being the case, no foundation had been established for the introduction into evidence of the 12.7 grams of cocaine. The potential for prejudice arising from these two errors leads me to conclude, as does the majority, that Palumbo's conviction on Count II should be vacated, and the case remanded to the district court for re-sentencing.