735 F.2d 1173
 15 Fed. R. Evid. Serv. 1566
 UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel A. MONACO, Jr., Defendant-Appellant.
 No. 83-1061.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Feb. 17, 1984.
Decided June 26, 1984.
 
 Fred Morrison, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.
 Clifford Tedmon, Tedmon & Tedmon, Sacramento, Cal., for defendant-appellant.
 Appeal from the United States District Court for the Eastern District of California.
 Before DUNIWAY, FLETCHER and FERGUSON, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 Daniel A. Monaco, Jr. ("Monaco") appeals his conviction of fraudulently concealing from creditors of the bankrupt estate of Golden Plan of California ("Golden Plan") a Rolls Royce Silver Spirit, between April 21 and April 27, 1982, in violation of 18 U.S.C. Sec. 152.
 
 
 2
 On appeal, Monaco contends that the admission of prior testimony under the hearsay exception for statements against penal interest violated the due process clause of the fifth amendment and the confrontation clause of the sixth amendment to the United States Constitution. We agree that it was error to admit the prior testimony as an exception to the hearsay rule. However, because we find it to have been harmless, we affirm.
 
 FACTS
 
 3
 Monaco is the former owner and president of Golden Plan of California, a brokerage house. In December 1981, Monaco made a $20,143 downpayment on a $109,000 Rolls Royce by a check bearing his signature and drawn on Golden Plan's account.
 
 
 4
 On January 15, 1982, the Rolls Royce dealer received a check for $80,593.68, signed by Robert Lyon, the Golden Plan corporate comptroller, which was drawn on the Golden Plan account. The check bore a notation that title was to be taken in the name of Golden Plan. Later that day, a Golden Plan employee contacted the dealer to advise him to hold the check. The dealer received another Golden Plan check for the same amount signed by Lyon but without the title notation.
 
 
 5
 On January 29, 1982, the California Department of Real Estate placed Golden Plan in involuntary bankruptcy.
 
 
 6
 The events which form the basis for the indictment occurred in April 1982. An automobile repossessor attempted to seize the Rolls Royce pursuant to a bankruptcy court order of repossession. The repossessor showed Monaco the court order. Monaco replied that he had the pink slip to the car, and that it belonged to him. Monaco's wife then drove the car away. Monaco sold the vehicle for $60,000 to a car dealer. A check for $60,000 made out to Monaco was deposited in a savings account on April 26, 1982. The proceeds were eventually seized by the bankruptcy trustee.
 
 
 7
 At Monaco's trial for concealing the Rolls Royce, the government called Robert Lyon, the corporate comptroller, in order to prove Monaco's knowledge that Golden Plan funds had been used to purchase the Rolls Royce. Lyon invoked his fifth amendment privilege to refuse to testify and was dismissed. Over Monaco's objection, the court allowed sections of the transcript of Lyon's testimony at a bankruptcy proceeding to be read into evidence.
 
 
 8
 The substance of Lyon's prior testimony is as follows: In January 1982, Golden Plan personnel prepared a check to pay for the Rolls Royce purchased by Monaco. Lyon signed the check after noting that title was to be taken in Golden Plan. However, Monaco had the check voided because he wanted to keep title in his own name. A new check was drawn up without the title notation which Lyon signed under protest and for fear that he would otherwise be fired. The funds for the check came out of Golden Plan's general account.
 
 DISCUSSION
 
 9
 Monaco contends that the district court denied him his right to confront witnesses by admitting into evidence Lyon's prior testimony. The government argues that the district court properly admitted the evidence under the exception to the hearsay rule for statements against penal interest, Fed.R.Evid. 804(b)(3). At the outset, we note that the evidence was inadmissible under the former testimony exception, Fed.R.Evid. 804(b)(1), because Monaco had no opportunity to cross-examine Lyon.
 
 
 10
 The right to cross-examine witnesses at the trial of the accused is protected by the confrontation clause of the sixth amendment which provides that the accused in a criminal trial has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI, cl. 2. The denial of the right of confrontation "calls into question the ultimate 'integrity of the fact-finding process.' " Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (quoting Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)). However, the right of confrontation is not absolute. An out-of-court statement may be admissible against the accused if it is necessary and reliable. Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980).
 
 
 11
 Necessity is proven by a showing that the witness is unavailable. Ohio v. Roberts, 448 U.S. at 65, 100 S.Ct. at 2538. Monaco concedes that Lyon was unavailable because of a valid claim of privilege under the fifth amendment. See United States v. Fleishman, 684 F.2d 1329, 1338 n. 10 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).
 
 
 12
 Even though the declarant is unavailable, the prosecution must prove that the statement it seeks to introduce bears "indicia of reliability." Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (plurality opinion). The Supreme Court has stated that, for the purposes of the confrontation clause, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Ohio v. Roberts, 448 U.S. at 66, 100 S.Ct. at 2539. Such "firmly rooted" hearsay exceptions include dying declarations, Mattox v. United States, 156 U.S. 237, 243-44, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895), and cross-examined prior testimony, Mancusi v. Stubbs, 408 U.S. 204, 213-16, 92 S.Ct. 2308, 2313-15, 33 L.Ed.2d 293 (1972). We need not determine whether the penal interest exception is so reliable that mere compliance with the exception satisfies all confrontation infirmities, e.g., United States v. Perez, 658 F.2d 654, 660 (9th Cir.1981) (co-conspirator exception not automatically reliable), for we find that the hearsay exception for statements against penal interest was not properly applied in this case.
 
 
 13
 The district court admitted the prior testimony as a statement against penal interest under Fed.R.Evid. 804(b)(3). We review the district court's decision to admit a hearsay statement under 804(b)(3) for an abuse of discretion. United States v. Poland, 659 F.2d 884, 895 (9th Cir.) (per curiam), cert. denied, 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981). This court has on several occasions considered the application of 804(b)(3) to statements offered by the defendant to exculpate himself. See United States v. Hoyos, 573 F.2d 1111, 1115 (9th Cir.1978); United States v. Satterfield, 572 F.2d 687, 690-93 (9th Cir.), cert. denied, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978). Recently, we have discussed the admissibility of statements offered by the prosecution which inculpate the defendant. United States v. Layton, 720 F.2d 548, 558-61 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). In either case, 804(b)(3) requires that the declarant be unavailable and that the statements tend to subject the declarant to criminal liability such that a reasonable person would not have made the statements unless they were true. Id. at 559. If offered to exculpate the defendant, the rule explicitly requires "corroborating circumstances which indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3). The Fifth Circuit has read the corroboration expressly required for exculpatory statements into the rule as applied to inculpatory statements in order to satisfy the confrontation clause. United States v. Alvarez, 584 F.2d 694, 701 (5th Cir.1978). Accord, United States v. Oliver, 626 F.2d 254, 260 (2d Cir.1980); United States v. Riley, 657 F.2d 1377, 1383 (8th Cir.1981), cert. denied, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); United States v. Palumbo, 639 F.2d 123, 131 (3d Cir.) (Adams, J. concurring), cert. denied, 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981). Because we conclude that the statutory requirements of 804(b)(3) have not been satisfied, we do not reach this question.
 
 
 14
 Rule 804(b)(3) is not limited to confessions of criminal responsibility, although the statements must, in a real and tangible way, subject the declarant to criminal liability. Layton, 720 F.2d at 557-60. A showing that the statements solidly inculpate the declarant is required. Hoyos, 573 F.2d at 1115. The government contends that Lyon has exposed himself to criminal liability under 18 U.S.C. Sec. 152 for fraudulently transferring assets in contemplation of a bankruptcy proceeding.[1] We disagree. There is no evidence that Lyon knew, at the time he signed the check, that involuntary bankruptcy was imminent or that Monaco might attempt to conceal the Rolls Royce from the bankrupt estate. See United States v. Guiliano, 644 F.2d 85, 87 (2d Cir.1981). The government also argues that the testimony may subject Lyon to liability for embezzlement. This is merely speculation. The government has failed to meet its burden of showing that the statements are solidly inculpatory.
 
 
 15
 In addition, the statement must be one that a reasonable person in the declarant's position would not have made unless it were true. Layton, 720 F.2d at 559. Depending on the circumstances, a purportedly damaging statement may be made with the purpose of placating the authorities or diverting their attention. Riley, 657 F.2d at 1384. In particular, "a statement admitting guilt and implicating another, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Fed.R.Evid. 804(b)(3) advisory committee notes. The courts have closely scrutinized statements made while the declarant is in custody and offered against the accused, and have consistently held that the circumstances render such statements unreliable. See, e.g., Riley, 657 F.2d at 1384-85; Palumbo, 639 F.2d at 128.
 
 
 16
 Similarly, ostensibly incriminatory statements made in a testimonial setting which inculpate a third party may be motivated by expectations of leniency or preferential treatment from the authorities, or a desire for revenge. The trustworthiness of these statements is likewise suspect. Cf. United States v. Gonzalez, 559 F.2d 1271, 1273 (5th Cir.1977).
 
 
 17
 In Layton, we held admissible under 804(b)(3) inculpatory statements made spontaneously and in confidence to a trusted advisor. 720 F.2d at 560. Under the circumstances, the court rejected the suggestion that the declarant was trying to divert guilt from himself. Id. Here, Lyon testified voluntarily and without the promise of immunity, in the presence of a state attorney general, in a bankruptcy proceeding similar to a deposition. Since Lyon had already implicated himself in the transfer of assets by signing the checks, he had reason to direct blame away from himself. He testified that he had been ordered by Monaco to issue the checks and that he did so only after protesting and out of fear for his job. He minimized his responsibility for the transfer of assets, and inculpated Monaco more than he incriminated himself. Under the circumstances, he may have hoped to "curry favor with the authorities" and avoid prosecution by directing responsibility on to his employer.
 
 
 18
 Because we find that Lyon's statement was neither solidly against his penal interest nor made under circumstances which supported its trustworthiness, we hold that it was an abuse of discretion to admit the statement under the hearsay exception for statements against penal interest.
 
 
 19
 Lyon's prior testimony falls within no other hearsay exception. Hearsay, inadmissible under an exception, is unreliable, "at least absent a showing of particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. at 66, 100 S.Ct. at 2539; United States v. McKinney, 707 F.2d 381, 384 n. 6 (9th Cir.1983). Lyon's prior testimony lacks the guarantees of trustworthiness which adhere to declarations against interest. Even though the testimony was to a certain extent corroborated by the checks, we find that the admission of the testimony violated Monaco's right of confrontation.
 
 
 20
 However, we conclude that under the circumstances the admission of the testimony was harmless error. Confrontation violations are tested by the constitutional error doctrine established in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). United States v. Fielding, 630 F.2d 1357, 1366 (9th Cir.1980). Violations of the confrontation clause require reversal unless they are harmless beyond a reasonable doubt. McKinney, 707 F.2d at 384-85.
 
 
 21
 Monaco was not charged with transferring assets out of the bankrupt estate, but rather with knowingly concealing the Rolls Royce from the bankrupt estate of Golden Plan between April 21 and April 27, 1982. When confronted with the bankruptcy court order of repossession in April, Monaco claimed to have the "pink slip to this car," and soon afterward sold the Rolls Royce to a dealership for approximately one half the purchase price. Lyon's testimony merely went to a collateral issue--Monaco's knowledge that the car was purchased with Golden Plan funds. There is corroborative evidence that Monaco knew the source of these funds. The checks with which the car was purchased were admitted into evidence, as was the testimony of the car dealer concerning the receipt of the checks. Monaco issued the $20,143 downpayment check using Golden Plan funds. The subsequent checks were issued by Monaco's employee, the comptroller. An inference can be drawn that Monaco, as employer of the check writer and beneficiary of the transfer of assets, had knowledge of the transaction. Lyon's testimony is merely cumulative evidence relevant to a collateral issue. The admission of the prior testimony, although a constitutional error, was "innocuous." See Rushen v. Spain, --- U.S. ----, ----, 104 S.Ct. 453, 457, 78 L.Ed.2d 267 (1983) (per curiam).
 
 
 22
 Monaco's conviction is AFFIRMED.
 
 
 23
 DUNIWAY, Circuit Judge (concurring and dissenting):
 
 
 24
 I concur in the last two paragraphs of Judge Ferguson's opinion because I agree that the "error," if it was error, was harmless.
 
 
 25
 I do not concur in the balance of the "Discussion" because I regard it as dictum. The claimed error being harmless, we need not decide whether it was error. The decision of that question by the majority is dictum, because it is not necessary to the disposition of the case. See McDaniel v. Sanchez, 1981, 452 U.S. 130, 141, 101 S.Ct. 2224, 2231, 68 L.Ed.2d 724.
 
 
 26
 As the Supreme Court has recently remarked, in a somewhat different context:
 
 
 27
 In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.
 
 
 28
 Strickland v. Washington, --- U.S. ---- at ----, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674.
 
 
 29
 Our job is not to grade the trial judge's performance, but to decide the case correctly. We should, in my judgment, avoid unnecessary excursions into the complexities of the law--such as those of the rule against hearsay and its exceptions--whenever we can properly do so. This is such a case. When we conclude, as we do here, that we are going to find an alleged error harmless, we should defer the question of error to another day, when it is necessary for us to face it. When we undertake to decide a question that we do not need to decide, there is always a risk that we will give it less careful consideration than we should. I do not say that my sister and brother have done that here. I do say that we should avoid the risk of doing so.
 
 
 30
 Except for the ruling that the claimed error was harmless, I dissent. I concur in the result.
 
 
 
 [1]
 Title 18 U.S.C. Sec. 152 provides in pertinent part:
 Whoever ... as an agent or officer of any ... corporation, in contemplation of a case under title 11 by or against ... any other ... corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of ... the property of such ... corporation ... [s]hall be fined not more than $5000 or imprisoned not more than five years, or both.