**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Daniel Emilio (Lucero) JONES,**
**Defendant-Appellant.**

No. 83–1173.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 16, 1983.

Decided July 19, 1985.

As Amended Aug. 14, 1985.

Brian L. Sullivan, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Randall J. Roske, Asst. Federal Public Defender, Las Vegas, Nev., for defendant-appellant.

---

1. On May 28, 1985 the assignment for writing this disposition was changed to Judge Choy.

Before WRIGHT, CHOY and POOLE, Circuit Judges.

CHOY, Circuit Judge: [1]

Jones was convicted of interference with commerce by threats of violence under 18 U.S.C. § 1951. Jones was charged with attempting to extort $65,000 from the Nevada Savings and Loan Association through Sandy Kelsay, its new accounts representative, by threatening to kill her daughter, Cindy Kelsay.

Sandy Kelsay testified that an unidentified male called her at the savings and loan office and told her to pay him the sum of money, threatened her daughter's life, and warned her not to contact her ex-husband, an FBI agent. She could not identify the caller.

Kelsay also testified to events surrounding a stake-out at the site of the drop of the ransom money specified by the caller. She saw Jones there and recognized him as her daughter's friend who had visited her home twice.

Eugene Boileau and Steven Rodriguez had participated in the attempted pick-up of the ransom money. Kelsay related out-of-court statements made to her by these two men during the attempted pick-up. The statements showed they were paid to collect a bag from a Mrs. Kelsay on behalf of a third man. Boileau said he believed the collection was part of a cocaine purchase. The defense timely objected to the introduction of their statements as hearsay.

A government witness, Julius Dickinson, testified that Jones asked Dickinson to "hold some girl" as part of a "scheme." He said Jones told him he was going to call the girl's mother to "try and get some money out of [her]." Dickinson refused to help. The conversation was within one week of the attempted extortion. The defense tried to show Dickinson was biased by asking if he was testifying because

Jones had rebuffed a homosexual advance that Dickinson made to him. The court sustained the government's objection.

FBI agents who had participated in the stake-out testified that they saw Jones talking to Boileau and Rodriguez, and then to Rodriguez alone. The agents saw Jones watch Kelsay from several locations during the stake-out. Jones denied knowing either man when questioned after his arrest.

The defense moved for an acquittal based on insufficiency of evidence, and denial of compulsory process because Boileau and Rodriguez were not made available for defense after the FBI had interviewed them. The trial court denied the motion. We reverse.

ISSUES

Of the several issues raised by Jones in this appeal, there is merit in only two of them:

(1) That the court erred in refusing to permit cross-examination of Dickinson concerning bias from a rebuffed homosexual advance;

(2) That the court erred in admitting the hearsay statements of Boileau and Rodriguez.

### Cross-Examination for Bias

The confrontation clause protects the right of a defendant to cross-examine witnesses for bias. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). However, a court's decision on the scope of cross-examination will not be reversed absent an abuse of discretion. *United States v. Bleckner*, 601 F.2d 382, 385 (9th Cir.1979). *See Davis*, 415 U.S. at 316, 94 S.Ct. at 1110. *See also* Fed.R.Evid. 611(a)(3). When cross-examination concerns bias, the test is whether the jury had sufficient information to assess the witness's bias even without the excluded information. *Bleckner*, 601 F.2d at 385.

The court did not allow Jones to inquire whether Dickinson had been rebuffed by Jones when he made a homosexual advance. The court erred.

In *United States v. Nuccio*, 373 F.2d 168 (2nd Cir.), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967), the trial judge refused to permit cross-examination of a government witness about a rebuffed homosexual advance made to one defendant. The defendant then detailed the advance and the witness's subsequent threat to "get" the defendant. The witness denied the allegation on rebuttal. The defense was permitted to cross-examine the witness to show that the denial was contrived. 373 F.2d at 171. The Second Circuit criticized the trial court's refusal to allow initial cross-examination concerning the rebuffed advance, but found no reversible error because cross-examination immediately after the witness's testimony-in-chief would have made no substantive difference. *Id.*

Since *Nuccio*, two other circuits have agreed that evidence concerning rebuffed homosexual advances is in principle admissible to show bias. *United States v. Bruscino*, 662 F.2d 450, 462 n. 25 (7th Cir.1981), *rev'd on other grounds*, 687 F.2d 938 (1982) (en banc), *cert. denied*, 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983); *Tinker v. United States*, 417 F.2d 542, 544–45 (D.C.Cir.), *cert. denied*, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969). A third upheld refusal to permit testimony by third parties concerning a government witness's homosexuality, given that the defendant had been permitted to cross-examine him about both rebuffed homosexual advances and his homosexuality. *United States v. Diecidue*, 603 F.2d 535, 550 (5th Cir.1979).

Violations of the confrontation clause require reversal unless they are harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *United States v. McKinney*, 707 F.2d 381, 384–85 (9th Cir.1983). Because most of the other evidence of Jones's connection to the extortion scheme is circumstantial and not overwhelming, Dickinson's testimony may have been crucial to the jury's decision to

convict.[2] *See McKinney*, 707 F.2d at 385. Therefore, because there is a "reasonable possibility" that the defense's inability to cross-examine Dickinson for bias materially affected the verdict, we must reverse. *See United States v. Valle-Valdez*, 554 F.2d 911, 915 (9th Cir.1977).

### Hearsay Statements

■ A trial judge's decision to admit alleged hearsay will not be disturbed absent abuse of discretion. *United States v. Ford*, 632 F.2d 1354, 1377–78 (9th Cir. 1980), *cert. denied sub nom. Armstrong v. United States*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981).

Kelsay testified to statements made by Boileau and Rodriguez that were offered to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c).

■ The government argues, however, that the statements were not hearsay since they were made by Jones's agents and concerned a matter within the scope of the agency during its existence. *See* Fed.R. Evid. 801(d)(2)(D). The fact of agency may not be proved by the alleged agent's extrajudicial statements. *United States v. Bensinger Co.*, 430 F.2d 584, 593 (8th Cir.1970). Evidence of agency must be substantial, although proof by a preponderance is not necessary. *United States v. Flores*, 679 F.2d 173, 178 (9th Cir.1982), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983).

■ Kelsay testified that she met with two strangers, later identified as Boileau and Rodriguez, at the time and place the extortionist had set for the ransom drop. After Kelsay refused to get into a cab with the two men, Boileau convinced her to walk down an alley with him. Boileau asked her for the bag she was carrying. She refused. After awhile, Rodriguez appeared. He also asked Kelsay for the bag. This independent non-hearsay evidence strongly suggests that Boileau and Rodriguez had been in contact with the extortionist and were performing functions on his behalf, namely, the pick-up of the ransom money.

Jones was the only person present at the time and place set by the extortionist for the ransom drop that Kelsay recognized. He was observed meeting with Boileau and Rodriguez shortly before they met with Kelsay. He was also observed nervously watching Kelsay. He denied knowing Boileau and Rodriguez when questioned shortly thereafter. This circumstantial evidence is significantly buttressed by Dickinson's testimony that Jones had asked him to hold some girl as part of a scheme to get some money out of her mother.[3] In short, the evidence suggests that Jones was the extortionist and that he was using Boileau and Rodriguez to pick up the ransom money.

We conclude there was "substantial" evidence indicating that Boileau and Rodriguez were agents of Jones and that their statements were made during the existence of their agencies concerning matters within the scope of their agencies. Therefore, their statements were properly admitted under Fed.R.Evid. 801(d)(2)(D).

Defendant contends, however, that the Confrontation Clause requires that the prosecution prove that Boileau and Rodriguez were unavailable before their statements can be admitted under Fed.R.Evid. 801(d)(2)(D). The Supreme Court has granted certiorari to review that question. *See United States v. Inadi*, 748 F.2d 812 (3d Cir.), *cert. granted*, —— U.S. ——, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985). Because we find that Boileau and Rodriguez were unavailable, we need not resolve that issue.

■ The test of a declarant's unavailability is whether prosecutorial authorities

---

**2.** Although Dickinson's credibility was already somewhat weakened by his admission that he was in jail when contacted by the FBI, a showing that he was *biased* against Jones could be significantly more damaging to his credibility.

**3.** Because the district court erroneously denied the defense an opportunity to cross-examine Dickinson for bias, we must reverse Jones's conviction. Although we must therefore be aware of this potential credibility problem, we may properly consider Dickinson's testimony in our overall assessment of the evidence.

have made a good faith effort to obtain his presence at trial. *See Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). The FBI made several attempts prior to trial to locate Boileau and Rodriguez. Because Boileau and Rodriguez were apparently vagrants without addresses, FBI Agent Guillard asked them to stay in touch with him. He sent a letter to Boileau at a post office Boileau said he occasionally checked for mail.

Hearing nothing, he went out to the area frequented by the two men to look for them. He interviewed people and showed photographs of Boileau and Rodriguez. He also checked police records to see if they had been arrested or placed in jail. All of his efforts were to no avail. We conclude, however, that a good faith effort was made to procure Boileau's and Rodriguez's presence at trial.

CONCLUSION

Because the trial court erred in refusing to permit cross-examination of Dickinson as to bias, and there is a reasonable possibility that the error materially affected the jury's verdict, we REVERSE and REMAND.