ALARCON, Circuit Judge:
 

 Defendant-appellant Diane Candoli appeals from the judgment entered following her convictions for conspiracy under 18 U.S.C. § 371, attempted arson under 18 U.S.C. § 844(i), arson under 18 U.S.C. § 844(i), and mail fraud under 18 U.S.C. § 1341. Candoli seeks reversal on the following grounds:
 

 (1) Candoli was unfairly prejudiced by the giving of a flight instruction because the government failed to reveal favorable evidence regarding her codefendant’s flight.
 

 (2) The evidence was insufficient to sustain her conviction for attempted arson.
 

 (3) The district court improperly limited cross-examination of a prosecution witness’ bias.
 

 (4) The district court erred by admitting evidence that another “suspect” was asked to take a polygraph test.
 

 (5) The district court erred when it allowed the prosecution to present reputation evidence to bolster the credibility of an expert witness.
 

 (6) The district court erred when it allowed the in-court identification of a co-conspirator because the pretrial identification procedures were impermissibly suggestive and the prosecution lost the photospread used for the pretrial identification.
 

 (7) The district court erred when it admitted statements of Candoli’s co-defendants and denied Candoli’s related motion for severance.
 

 (8) The evidence was insufficient to sustain Candoli’s convictions for conspiracy, arson, and mail fraud.
 

 I.
 

 Facts
 

 Diane Candoli, Angel Vultchev, and Steven Rostov were indicted on May 14, 1986. They were charged with conspiracy, attempted arson, arson and mail fraud.
 

 Defendant Candoli was the sole owner and operator of a Beverly Hills boutique called Harold’s Place. Rostov worked as the manager at Harold’s Place. Vultchev was Rostov’s roommate.
 

 On July 10, 1984, Rostov and Vultchev were seen by police at approximately 4:30 a.m. parked about 100 yards from Harold’s Place. About an hour later they were observed by police officers travelling the wrong way in a one-way alley. The police officers stopped them. Rostov and Vult-chev gave inconsistent reasons for being in the area. The police officers observed plastic bottles containing gasoline and some matches in the trunk of the car. The car was impounded because it had been reported stolen.
 

 On July 22, 1984, at about 1:00 a.m. fire broke out in the four story multi-tenant office building where Harold’s Place was located. Subsequent investigation revealed that the fire was set with gasoline and had three points of origin. One fire was set on the first floor inside Harold’s Place which was only accessible by someone with a key and with the ability to deactivate the alarm. The two other fires were set on the second and third floors near the stairwells and electrical closets. The second and third floor stairwells were accessible to the public.
 

 On the night of the arson, Rostov and Vultchev were seen at approximately 12:50 a.m. at the Daisy Club which was a two minute drive or a six minute walk from Harold’s Place.
 

 Prior to the arson at Harold’s Place, Can-doli dissolved her partnership and became a sole proprietor. A few weeks later she obtained a $100,000 insurance policy on Harold’s Place. A month before the fire Can-doli, on her own initiative, returned some goods that were held on consignment at Harold’s Place. A few weeks prior to the fire, Candoli had a sale at Harold’s Place.
 

 Following the fire, Candoli filed an insurance claim for the full policy limit on Ha
 
 *501
 
 rold’s Place of $100,000. The insurance company paid Candoli the policy limit.
 

 Candoli and Vultchev were scheduled for a joint trial. Rostov was a fugitive and could not be brought to trial with his code-fendants. Prior to trial, Candoli filed a severance motion. The district court denied the motion.
 

 The jury trial commenced on January 6, 1987. On January 28, 1987, the government rested. On that same date Vultchev failed to appear at the trial. The trial proceeded in his absence. The jury returned verdicts of guilty on all counts against Candoli and Vultchev on February 2, 1987.
 

 Candoli subsequently filed a motion for a new trial which was denied on June 22, 1987. The district court sentenced Candoli on September 10, 1987. Candoli filed a timely notice of appeal that same day.
 

 Additional facts are set forth where pertinent to the discussion of the issues.
 

 II.
 

 Discussion
 

 A.
 
 Flight Instruction
 

 Candoli contends that the district court prejudicially erred in giving a flight instruction to the jury regarding Vultchev’s mid-trial disappearance. Candoli further contends that the government withheld “favorable information relating to Vultchev’s absence [which] resulted in an attack on the credibility of Mrs. Candoli’s chief exculpatory witness that could not be rebutted by Mrs. Candoli without the information withheld by the government.”
 

 On January 28, 1987, after the government had rested its case-in-chief, Vultchev failed to appear in court. The district court allowed Vultchev’s counsel to attempt to contact him by telephone. He was unable to do so. Tara Duffy, Candoli’s daughter, however, was able to reach Vultchev by telephone. Duffy asked Vultchev why he was not in court. Duffy’s conversation with Vultchev was overheard by an Alcohol, Tobacco and Firearms (“ATF”) officer who relayed this information to the prosecution. During cross examination of Duffy, the prosecution sought to elicit testimony regarding her conversation with Vult-chev. Candoli objected. The district court overruled the objection, but gave a limiting instruction explaining to the jury that the testimony regarding Vultchev’s absence was only admissible against him. The district court further admonished the jury that the fact that Duffy was Candoli’s daughter should not cause the jury to consider this evidence against Candoli.
 

 On review, we must consider the jury instructions as a whole to determine whether the district court abused its discretion.
 
 United States v. Echeverry,
 
 759 F.2d 1451, 1455 (9th Cir.1985).
 

 Because Candoli was present during the whole trial, the flight instruction was inapplicable to her. Candoli may not challenge the propriety of the flight instruction with respect to codefendant Vultchev. Candoli can challenge the instruction, however, on the ground that it prejudiced her right to a fair trial.
 
 See United States v. Lobo,
 
 516 F.2d 883, 885 (2d Cir.) (jury instruction challenged based on claim that the instruction implied that codefendant was also guilty of the charged offense)
 
 cert. denied,
 
 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975).
 

 The Second Circuit in
 
 Lobo
 
 found that no prejudice to a codefendant resulted from the giving of a flight instruction which was only applicable to the defendant who fled midtrial. The Second Circuit stated, “[w]e fail to see ... that [the defendant’s] decision to flee implied the guilt of anyone but himself; indeed, [the codefendant’s] continued presence, by contrast, might have been viewed by the jury as belief in his own innocence.”
 
 Id.
 
 at 884. The Second Circuit held that for a violation to occur the inference of a codefendant’s guilt “ ‘would have to be clear and practically inescapable.’ ”
 
 Id.
 
 at 885 (quoting
 
 United States v. Sparano,
 
 422 F.2d 1095, 1099 (2d Cir.1970)).
 

 In the instant matter, the jury could have viewed Candoli’s continued presence as a sign that Candoli did not have a guilty conscience. Furthermore, the flight in
 
 *502
 
 struction did not require that the jury consider Vultchev’s absence as evidence of his guilt.
 
 [1]
 
 It is, therefore, unlikely that it created an inference that Candoli was guilty.
 

 Candoli also claims prejudice because the flight instruction was not expressly limited to Vultchev. Candoli did not request such a limiting instruction. Because she was not absent from the trial, it was obvious that the flight instruction did not apply to her and it was not necessary for the district court to give a limiting instruction
 
 sua sponte. See United States v. DeLeon,
 
 498 F.2d 1327, 1332 (7th Cir.1974) (“At least in the absence of a request, it was unnecessary for the district judge to specify that the flight instruction applied only to [the fleeing defendant]”).
 

 Moreover, when the district court admitted evidence of Vultchev’s flight, the district court instructed the jury that the evidence was limited to Vultchev and was not admissible against Candoli. In addition, when the district court started to instruct the jury, the district court stated that “[Ujnless otherwise stated, the jury should consider each instruction given to apply separately and individually to each defendant on trial.” Thus, the jury was instructed not to link Candoli and Vultchev together when considering each instruction. In light of this charge, the flight instruction was not applicable to Candoli. Candoli has failed to show that she was prejudiced by the giving of the flight instruction.
 

 Candoli contends that the government suppressed favorable evidence of Vultchev’s flight in violation of its obligation under
 
 Brady v. Maryland,
 
 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963).
 
 Brady
 
 requires the government upon request to turn over information favorable to the accused.
 
 Id.
 

 The evidence allegedly suppressed was information that Vultchev was wanted by the Los Angeles Police Department (L.A. P.D). The prosecution learned the afternoon of January 28,1987, that the L.A.P.D. was looking for Vultchev. An ATF case agent informed the prosecution that the L.A.P.D. had searched Vultchev's residence and his friend’s apartment pursuant to a search warrant on January 27, 1987. During the search, Vultchev’s friend either jumped or fell from the balcony and died. Vultchev’s counsel was apparently aware of this information because he spoke with Vultchev on the evening of January 27, 1987. Candoli contends that this information was favorable because it could have been used to “rebut” the prosecution’s attack on Duffy’s credibility.
 

 The government attempted to demonstrate that Duffy was biased by eliciting testimony from her that she had spoken to Vultchev the morning Vultchev was absent from trial at a time when Vultchev's attorney was unable to reach him. Evidence that Vultchev was wanted by the L.A.P.D., however, would not rebut the fact that Duffy reached Vultchev when his attorney could not. The fact that Vultchev was also wanted by the L.A.P.D. would not bolster the credibility of Duffy. The government did not violate its obligation under
 
 Brady
 
 to disclose favorable evidence.
 

 B.
 
 Attempted Arson
 

 Candoli contends that as a matter of law the evidence was insufficient to convict her of attempted arson. The government concedes that under recent decisions of this circuit the evidence was insufficient as a matter of law to convict Candoli of attempted arson. We review the evidence in the light most favorable to the prosecution to determine if “ ‘any rational trier of fact
 
 *503
 
 could have found the essential elements of the crime to have been proved beyond a reasonable doubt.’ ”
 
 United States v. Still,
 
 850 F.2d 607, 608 (9th Cir.1988) (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).
 

 To obtain a conviction for attempt, the prosecution was required to present evidence establishing both culpable intent and conduct constituting a substantial step toward the commission of the crime that is in pursuit of that intent.
 
 Still,
 
 850 F.2d at 608. Conduct which constitutes only “mere preparation” is insufficient to sustain an attempt conviction.
 
 Id.
 
 at 609.
 

 In
 
 United States v. Buffington,
 
 815 F.2d 1292 (9th Cir.1987), we found that the prosecution had failed to prove attempted robbery beyond a reasonable doubt where the prosecution failed to prove both culpable intent and a substantial step toward the commission of the crime. The defendants had assembled disguises and handguns. They had visited the bank twice. They drove by slowly while staring into the bank. They were armed when they left their vehicle and stood with their attention directed toward the bank.
 
 Id.
 
 at 1301-02.
 

 We concluded that culpable intent could not be inferred from this conduct. We further found the defendants’ actions to be too “tentative and unfocused” to constitute a substantial step toward the commission of the crime.
 
 Id.
 
 at 1303.
 

 In
 
 Still
 
 we held that while the prosecution established culpable intent beyond a reasonable doubt, it failed to present proof of a substantial step toward the commission of the bank robbery. 850 F.2d at 609-10. Although the evidence showed that Still was sitting in his van with the motor running about 200 feet away from the bank and wearing a wig, we concluded that this conduct established preparation, not an attempt.
 
 Id.
 
 at 610.
 

 In the instant matter, reversal of the attempted arson count is compelled by our decisions in
 
 Still
 
 and
 
 Buffington.
 
 On July 10, 1984, Vultchev and Rostov were seen driving by Harold’s Place and parking up the street. An hour later they were stopped by police driving away from Harold’s Place. Plastic bottles with gasoline were found in the trunk. Under the law of this circuit this conduct does not constitute a substantial step toward the commission of the crime of arson. Because Rostov’s and Vultchev’s conduct does not constitute the crime of attempted arson, Candoli’s conviction as an aider and abettor cannot stand.
 

 C.
 
 Limitation of Cross Examination
 

 Candoli contends that the district court improperly limited her cross-examination of Agent Michael Fitzpatrick. She argues that she was thereby precluded from demonstrating to the jury that Fitzpatrick was a biased witness.
 

 The scope of cross-examination is within the discretion of the trial court. The district court’s decision regarding the scope of cross-examination will not be reversed absent a showing of abuse of discretion.
 
 United States v. Jones,
 
 766 F.2d 412, 414 (9th Cir.1985). When a district court limits cross-examination concerning a witness’ alleged bias, we must decide whether the jury had sufficient information to assess the witness’ bias without the excluded information.
 
 Id.
 

 The Supreme Court has defined bias as “a term used in the ‘common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.”
 
 United States v. Abel,
 
 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Here, Candoli wanted to cross-examine Agent Fitzpatrick regarding a three day suspension he had received as a sanction for failure to perform his duties properly in his dealings with the insurance companies who insured the businesses in the building where Harold’s Place was located. Agent Fitzpatrick was suspended for releasing internal ATF forms to insurance companies, allowing more than one representative to have such documents, and failing to keep a proper log of these disclosures. The district court ruled that inquiry
 
 *504
 
 into the suspension would be “collateral” and “diversionary.”
 

 The record shows that the jury was aware from Agent Fitzpatrick’s testimony that he was a law enforcement officer and the former case agent responsible for the investigation of the Candoli matter. From these facts, the jury could reasonably infer that Agent Fitzpatrick had an interest in the outcome of the case and was “biased” against Candoli. Assuming that evidence of Agent Fitzpatrick’s suspension for improper handling of documents would have tended to prove that he would slant his testimony against Candoli, it was cumulative. The district court did not abuse its discretion in limiting the cross-examination of Agent Fitzpatrick.
 

 D.
 
 Polygraph Evidence
 

 Candoli contends that Agent Fitzpatrick’s reference to a polygraph examination prejudiced her right to a fair trial. The reference to a polygraph examination came out during the direct examination of Agent Fitzpatrick. The witness was asked whether Daniel Gottlieb was a suspect in the arson investigation. Daniel Gottlieb was the owner of the building in which Harold’s Place was located. The challenged testimony is reflected in the following portion of the record:
 

 Prosecutor: Did you pursue Mr. Gottlieb as a possible suspect?
 

 Agent Fitzpatrick: Yes, we did.
 

 It culminated in asking him to take a polygraph examination.
 

 Mr. Re: Objection.
 

 Mr. Gabbert: Join.
 

 Mr. Re: Move to strike.
 

 The Court: It is overruled.
 

 (emphasis added).
 

 Candoli contends that this testimony caused the jury to infer that Daniel Gott-lieb had taken a polygraph examination and passed and that Candoli either refused to take one or took one and did not pass.
 

 We review a district court's decision regarding the admissibility of polygraph evidence for an abuse of discretion.
 
 United States v. Bowen,
 
 857 F.2d 1337, 1341 (9th Cir.1988). “We have consistently expressed an inhospitable view towards the admission of unstipulated polygraph evidence.”
 
 Brown v. Darcy,
 
 783 F.2d 1389, 1394 (9th Cir.1986). Polygraph evidence offered to prove the truth or falsity of the results of a polygraph examination is inadmissible.
 
 Bowen,
 
 857 F.2d at 1341.
 

 We have not previously assessed the effect of a witness’ unsolicited reference to a polygraph examination. The Sixth and Seventh Circuits have confronted this issue in
 
 United States v. Dietrich,
 
 854 F.2d 1056, 1058-60 (7th Cir.1988) and
 
 United States v. Murray,
 
 784 F.2d 188, 188-89 (6th Cir.1986).
 

 In
 
 Murray
 
 the Sixth Circuit held that a prosecution witness’ unsolicited reference to the fact that the government had requested that the
 
 defendant
 
 take a polygraph examination was reversible error.
 
 Id.
 
 The Sixth Circuit takes the position that the introduction of any polygraph material into evidence is error. Because the proof of guilt was not overwhelming, the Sixth Circuit concluded the reference to the polygraph test was not harmless beyond a reasonable doubt.
 
 Id.
 

 In
 
 Dietrich
 
 the Seventh Circuit concluded that a prosecution witness’ reference to the fact that
 
 he
 
 had taken a polygraph examination was not reversible error. 854 F.2d at 1059. In
 
 Dietrich
 
 the prosecution asked its witness whether the statement he gave to the police was true. The witness responded “Yes, sir, and took a polygraph test.” The district court ordered that the reference to the polygraph test be stricken from the record and admonished the jury to disregard it.
 
 Id.
 
 The Seventh Circuit concluded that any error was cured by the court’s immediate limiting instruction.
 
 Id.
 

 Unlike the situation in
 
 Murray,
 
 Agent Fitzpatrick’s testimony regarding a polygraph examination did not involve Candoli or her codefendants. As in
 
 Dietrich,
 
 Agent Fitzpatrick referred to the polygraph examination of someone other than the accused. The testimony of the witness in
 
 Dietrich
 
 may have resulted in an improper bolstering of the witness’ credibility. In contrast, Agent Fitzpatrick’s testi
 
 *505
 
 mony did not bolster the credibility of any witness who testified. In
 
 Dietrich
 
 the district court struck the witness’ self-serving testimony. In the instant matter, the district court refused to strike the polygraph testimony and gave no cautionary instruction. We are persuaded that the court erred in failing to strike the reference to a polygraph examination because it may have caused the jury to speculate that Mr. Gottlieb took a polygraph examination and passed it.
 

 Although the admission of the testimony concerning the polygraph examination was error, it was not an error of constitutional dimension. Reversal, therefore, is not required unless it is more probable than not that the error materially affected the verdict.
 
 United States v. Guerrero,
 
 756 F.2d 1342, 1347 (9th Cir.)
 
 cert. denied,
 
 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984).
 

 It is unlikely that Agent Fitzpatrick’s reference to the polygraph exam affected the verdict. Candoli’s theory of the case was that other “unknown persons” committed the arson. Even assuming arguendo that the jury inferred that Daniel Gottlieb was eliminated as a suspect as a result of his responses to a polygraph examination, the jury could have reasonably reached the same conclusion based on the admissible evidence in the record. The prosecution presented evidence that Daniel Gottlieb was eliminated as a suspect because he had no motive to commit the crime. Evidence that Daniel Gottlieb was not a suspect did not prevent Candoli from arguing that other “unknown persons” committed the crime. Moreover, no other reference to the polygraph test was made by the witness or the prosecution. We are convinced the district court’s error in refusing to strike the references to a polygraph examination was not prejudicial because it did not materially affect the verdict.
 
 See Guerrero,
 
 756 F.2d at 1347 (incidental reference to the defendants’ prior conviction was harmless where the witness made no aggravated or repeated references to it).
 

 E.
 
 Admission of Evidence Regarding Arson Expert’s Reputation
 

 Candoli contends that the district court erred in allowing one expert witness to testify concerning the favorable professional reputation of a government expert. Los Angeles City Fire Department Investigator Gary Cooper was called as an expert witness during the government’s case-in-chief. The defense subjected Cooper to vigorous cross-examination. Subsequently, the government called another expert witness, ATF Agent Jerry Taylor. The prosecutor asked Taylor about Cooper’s reputation as an expert. Over defense counsel’s objections, Taylor was permitted to respond that Cooper’s reputation was “excellent.” The defense made a motion to strike and a motion for a mistrial. The district court denied each motion.
 

 The district court’s decision to admit evidence is reviewed for abuse of discretion.
 
 United States v. Turk,
 
 722 F.2d 1439, 1441 (9th Cir.1983)
 
 cert. denied,
 
 469 U.S. 818, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984). Candoli contends the evidence was improper character evidence. The government contends that the evidence was relevant and admissible.
 

 The prosecution’s question regarding Cooper’s “reputation in the field of fire or arson cause and origin determination” in the United States elicited testimony about Cooper’s character. Federal Rule of Evidence 404(a)(3) provides:
 

 (a) Character evidence generally
 

 Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
 

 (3) Character of witness
 

 Evidence of the character of a witness, as provided in rules 607, 608, and 609.
 

 Federal Rule of Evidence 608(a) limits the admissibility of evidence regarding a witness’ character. Rule 608(a) provides:
 

 (a) Opinion and reputation evidence of character
 

 The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject
 
 *506
 
 to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 

 Pursuant to Rules 404(a)(3) and 608(a), evidence of Cooper’s reputation should have been limited to evidence of Cooper’s reputation for
 
 truthfulness.
 
 Moreover, such reputation evidence would have been admissible only if Cooper’s character for truthfulness had been attacked. Fed.R. Evid. 608(a);
 
 United States v. Awkard,
 
 597 F.2d 667, 671 (9th Cir.) (under the Federal Rules, opinion testimony on credibility is limited to character for truthfulness),
 
 cert. denied,
 
 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979).
 

 The record indicates that the defense cross-examined Cooper vigorously concerning his investigation of the origin of the fire at Harold’s Place. The defense questions challenged the tests Cooper performed and his publications in the area of arson investigation. The questions asked of Cooper were consistent with the defense theory that the fire did not start inside Harold’s Place. The questions did not attack Cooper’s character for truthfulness. Therefore, under Rules 404(a) and 608(a) Taylor’s testimony regarding Cooper’s reputation in the field was inadmissible.
 

 The jury must decide a witness’ credibility.
 
 United States v. Binder,
 
 769 F.2d 595, 602 (9th Cir.1985). An expert witness is not permitted to testify specifically to a witness’ credibility or to testify in such a manner as to improperly buttress a witness’ credibility.
 
 Id.
 

 Taylor’s testimony amounted to an improper bolstering of Cooper’s credibility. The district court erred in overruling the defense objection to the reputation testimony and denying the motion to strike it. This error does not require reversal, unless it is more probable than not that its admission materially affected the verdict.
 
 Id.
 
 at 601-02.
 

 Candoli contends that this error materially affected the verdict because, absent the error, the jury may have believed that the fire originated outside Harold’s Place. The record, however, does not support this assertion. The defense did not call an expert in support of its theory that the fire started outside Harold’s Place. To accept the defense theory, the jury would have had to disbelieve Cooper's and Taylor’s uncontra-dicted testimony that the fire started inside Harold’s Place. Moreover, Taylor testified that he assigned Cooper to the investigation of the first floor where Harold’s Place was located and relied on the findings in Cooper’s report. The jury could have reasonably inferred from this evidence that Taylor had a high degree of confidence in Cooper’s qualifications as an expert. Thus, Taylor’s favorable opinion of Cooper could have been reasonably inferred by the jury in the absence of the improperly admitted reputation testimony. The reputation testimony did not materially affect the verdict.
 

 F.
 
 Motion to Suppress Identification Testimony
 

 Candoli contends that the identification testimony of the prosecution witness, Frank Jones, should have been suppressed because of impermissibly suggestive pretrial identification procedures. On the day of the alleged attempted arson, Jones sold gasoline to a man who asked that it be placed in plastic jugs. Three weeks later ATF investigators showed Jones two photospreads. Each contained six photographs. Jones picked out Rostov and said he was “fairly certain of his identification.” The photospread was subsequently lost. Two and a half years later during a pretrial meeting with the prosecution, Jones was shown a single photograph of Vultchev and was asked if that was the man who purchased the gasoline in the plastic jugs. Jones unequivocally stated he was not the man. Jones was then shown a photograph of Rostov. Jones identified Rostov as the man who purchased the gasoline. At trial, Jones testified he was “pretty certain” Rostov was the man who purchased the gasoline.
 

 
 *507
 
 The challenged identification procedures did not tend to connect Candoli to the alleged crimes. Ordinarily, an appellant may not seek review of alleged instructional errors and evidentiary rulings that appear only to affect a codefendant. If, however, an appellant can demonstrate that the alleged error concerning a codefendant’s rights also has a prejudicial impact on appellant’s right to a fair trial, we must review such claims.
 
 See e.g., Rawlings v. Kentucky,
 
 448 U.S. 98, 105-06, 100 S.Ct. 2556, 2561-62, 65 L.Ed.2d 633 (1980) (defendant could not challenge search of his companion’s purse unless defendant could show that government officials violated his fourth amendment rights);
 
 United States v. Jenkins,
 
 785 F.2d 1387, 1393 (9th Cir.) (defendant’s challenge to the admission of the deposition testimony of his codefendant was rejected where the deposition testimony did not implicate the defendant),
 
 cert. denied,
 
 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986).
 

 Candoli may not challenge the identification procedures unless she can show her right to a fair trial was prejudiced by the admission of the testimony.
 
 Id.; see also Lobo,
 
 516 F.2d at 884-85 (codefendant was allowed to challenge flight instruction inapplicable to him on the ground that it had a harmful effect on his defense). Candoli asserts that the testimony was prejudicial to her defense because Vultchev had stated that he had purchased the gasoline. Can-doli argues that Jones’ testimony was inadmissible against her because “the identification of Kostov as the purchaser of the gasoline made Vultchev a ‘liar,’ and almost certainly made Vultchev and Mrs. Candoli conspirators.”
 

 We fail to see how the fact that Vultchev may have lied about the purchase of the gasoline demonstrates that Candoli was a co-conspirator. Jones’ testimony did not implicate Candoli. Therefore, we conclude that Candoli may not challenge the admission of Jones’ identification testimony.
 

 G.
 
 Severance Motion
 

 Candoli contends that the district court erred in admitting certain statements made by Kostov and Vultchev. Candoli asserts that the admission of these statements was highly prejudicial and the district court erred in denying her motion for severance. We review the district court’s rulings admitting these statements for an abuse of discretion.
 
 Turk,
 
 722 F.2d at 1441.
 

 1.
 
 Vultchev’s and Kostov’s Statements Regarding the Gasoline and Their Presence in the Alley
 

 At trial the prosecution called Officer Berney. Officer Berney testified that he stopped a car traveling the wrong way in a one-way alley. Kostov and Vultchev were in the car. Over defense objections, the district court allowed Officer Berney to testify to the statements he received from Kostov and Vultchev when he questioned them separately regarding the reason for their presence in the alley.
 

 Officer Berney testified that Vultchev stated that he was there to get a friend by the name of “Sammy” who was coming from the Daisy Club. The district court instructed the jury that admissibility of this testimony was limited to the government’s case against Vultchev. This statement was admissible against Vultchev under the admissions exemption to the hearsay rule. Fed.R.Evid. 801(d)(2)(A). Candoli may not challenge the admission of this statement unless she can show its admission implicated or prejudiced her in some way.
 
 See Jenkins,
 
 785 F.2d at 1393 (defendant’s challenge to the admission of the deposition testimony of his codefendant was rejected where the deposition testimony did not implicate the defendant);
 
 see also Lobo,
 
 516 F.2d at 884-85 (codefendant was allowed to challenge flight instruction inapplicable to him on the ground that it had a harmful effect on his defense).
 

 Officer Berney further testified that Kostov stated that they were to meet two girls named “Maria” and “Christina.” The government argued that this statement was admissible as a false exculpatory statement made to conceal the arson attempt. The government also contends that the statement was admissible as a statement of a co-conspirator. The district
 
 *508
 
 court limited the admission of this statement to the government's proof concerning Vultchev. Candoli, again, may not challenge it unless she can show it implicated her or prejudiced her.
 
 See Jenkins,
 
 785 F.2d at 1393 (defendant’s challenge to the admission of the deposition testimony of his codefendant was rejected where the deposition testimony did not implicate the defendant);
 
 see also Lobo,
 
 516 F.2d at 884-85 (codefendant was allowed to challenge flight instruction inapplicable to him on the ground that it had a harmful effect on his defense).
 

 Because Kostov’s statement was not admitted for the truth of the matter asserted, it was not hearsay. It was properly admitted by the district court if it was relevant.
 
 United States v. Hackett,
 
 638 F.2d 1179, 1186-87 (9th Cir.1980),
 
 cert. denied,
 
 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). In
 
 Hackett,
 
 the trial court admitted statements of one codefend-ant Turner against another codefendant Hackett. The trial court admitted a statement Turner made in response to questioning by officers. Turner stated that he did not know Hackett. He also stated that he had just come from the yacht club. We concluded that these false exculpatory statements were not hearsay because they were not admitted for their truth. Other evidence presented by the prosecution demonstrated that the statements were false. Therefore, the mere fact that Turner made the statements implied his consciousness of guilt. Because the statements were not hearsay, we held that it was not necessary for the government to prove that they were in furtherance of the conspiracy to be admissible against the other defendants.
 
 Id.
 

 In the instant matter, the prosecution presented evidence that Kostov’s statement was inconsistent with Vultchev’s extrajudicial declaration. Because Kostov’s statement was not admitted for the truth of the matter asserted, but to demonstrate that Vultchev and Kostov were concealing their true reasons for being in the alley, it was properly admissible.
 
 See id.
 
 (statements not admitted for their truth were admissible simply if relevant in some way to prove the conspiracy charged). Because Kostov’s statement was admissible as a false exculpatory statement, we need not determine whether it also comes within the co-conspirator exemption to the hearsay rule.
 

 Officer Berney also testified that he asked both Vultchev and Kostov why they had gasoline in plastic containers in the trunk of the car. Officer Berney testified that one of them stated it was used to start his girlfriend’s car. Officer Berney could not remember which one made the statement. The district court admitted this testimony only against Vultchev. Candoli may challenge the admission of this statement if she can show it prejudiced her.
 
 See Jenkins,
 
 785 F.2d at 1393 (defendant’s challenge to the admission of the deposition testimony of his codefendant was rejected where the deposition testimony did not implicate the defendant);
 
 Lobo,
 
 516 F.2d at 884-85 (codefendant was allowed to challenge flight instruction inapplicable to him on the ground that it had a harmful effect on his defense).
 

 If this statement was made by Vultchev it was admissible as an admission. Fed.R. Evid. 801(d)(2)(A). If the statement was made by Kostov, it was admissible as a false exculpatory statement.
 
 See Hackett,
 
 638 F.2d at 1186-87 and discussion
 
 supra.
 

 2. Kostov’s Statement Regarding Possession of Keys to Harold’s Place
 

 Agent Fitzpatrick testified that he interviewed Kostov after the arson. Over objection, Fitzpatrick testified that Kostov stated that he had the only keys to Harold’s Place the night of the fire. Kostov also allegedly stated that there had been another set of keys, but they had been lost six months earlier. These statements were admitted against Vultchev and Candoli.
 

 The government contends that the statement was admissible both as a declaration against interest and under the residual hearsay exception. Under Rule 804(b)(3) a statement against a declarant’s penal interest is exempt from the hearsay rule if the declarant is unavailable to testify. A statement against interest is defined as:
 

 
 *509
 
 A statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant’s position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 

 Fed.R.Evid. 804(b)(3).
 

 The first requirement was met. Rostov was unavailable because he was a fugitive. The statement was also against Rostov’s penal interest. In
 
 United States v. Layton,
 
 720 F.2d 548, 559 (9th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984), we stated that the against interest requirement is not limited to confessions of criminal responsibility. What is required is that the statement “tend to subject” the declarant to criminal liability.
 
 Id.
 
 at 559-60. The statement is considered in the context of the surrounding circumstances. Fed.R.Evid. 804(b)(3) Advisory Committee Comment;
 
 see also Layton,
 
 720 F.2d at 559-60 (court considered the circumstances in concluding statement was against declarant’s interest). Considering the circumstances in the instant matter, Rostov’s statement that he had the only keys to Harold’s Place on the night of the fire was against his penal interest. The statement was made to an ATF investigator Rostov knew was investigating the fire. Moreover, he had been stopped and arrested by police officers approximately two weeks earlier with gasoline in the trunk of his car. Under these circumstances the statement was against Rostov’s penal interest.
 

 When a statement is against the declar-ant’s penal interest and also
 
 exculpates
 
 the defendant, Federal Rule of Evidence 804(b)(3) explicitly requires that the statement be corroborated by circumstances which indicate the trustworthiness of the statement. When a statement is against the declarant’s penal interest and is offered to
 
 inculpate
 
 the defendant, many circuits have held that the statement must be corroborated by circumstances which indicate trustworthiness.
 
 United States v. Alvarez,
 
 584 F.2d 694, 701 (5th Cir.1978);
 
 accord United States v. Oliver,
 
 626 F.2d 254, 260 (2d Cir.1980);
 
 United States v. Riley,
 
 657 F.2d 1377, 1383 (8th Cir.1981);
 
 United States v. Palumbo,
 
 639 F.2d 123, 131 (3d Cir.) (Adams, J. concurring),
 
 cert. denied,
 
 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981).
 

 This Circuit has not previously found it necessary to reach these issues.
 
 Layton,
 
 720 F.2d at 559 (court did not reach the issue because, whether or not it was required, the statement was corroborated);
 
 United States v. Monaco,
 
 735 F.2d 1173, 1176 (9th Cir.1984) (question not reached because statement was not against the de-clarant’s penal interest).
 

 Rostov’s statement that he had the keys neither inculpates nor exculpates Vultchev and Candoli. Federal Rule of Evidence Rule 804(b)(3) does not appear to require proof of corroborating circumstances of trustworthiness where a statement inculpates no one but the declarant. We do not need to reach this issue, however, because Rostov’s statement was corroborated. Laura Gottlieb testified that Rostov, as the manager of Harold’s Place, had the keys on many occasions. It is quite true that Duffy testified that she had the keys on the night of the fire. This conflict in the evidence goes to the weight of Rostov’s declaration, not to its admissibility.
 
 See
 
 Fed.R.Evid. 104(a) and (e) (preliminary question of admissibility is for the judge; parties may introduce to the jury evidence relevant to weight).
 

 The fact that an extrajudicial declaration may be admissible under the Federal Rules of Evidence does not establish compliance with the confrontation clause.
 
 Ohio v. Roberts,
 
 448 U.S. 56, 65, 100 S.Ct. 2531, 2538-39, 65 L.Ed.2d 597 (1980).
 
 Roberts
 
 set out a test to determine whether a hearsay statement is admissible without violating the confrontation clause. First, the
 
 *510
 
 government must prove that the declarant is unavailable. If the government proves unavailability, the statements are admissible only if they bear adequate “indicia of reliability.” “Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.”
 
 Id.
 
 at 66, 100 S.Ct. at 2639.
 

 At least one circuit has held that the declaration against interest hearsay exception is a firmly rooted hearsay exception.
 
 United States v. Katsougrakis,
 
 716 F.2d 769, 775 (2d Cir.1983),
 
 cert. denied,
 
 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). It should be noted, however, that the Second Circuit requires declarations against interest which inculpate the accused to be corroborated by circumstances indicating trustworthiness.
 
 Id.; Oliver,
 
 626 F.2d at 260-61. In
 
 Monaco,
 
 we indicated that those circuits which have read “the corroboration expressly required for exculpatory statements into the rule as applied to inculpatory statements [have done so] in order to satisfy the confrontation clause.” 735 F.2d at 1176.
 

 In the instant matter, we need not decide whether a declaration against interest is a firmly rooted exception to the hearsay rule. Rostov’s statement that he had the keys the night of the fire was corroborated by Laura Gottlieb’s testimony that Rostov often had the keys. Thus, the requirements of the confrontation clause in this matter are met whether or not the declaration against interest exception is a firmly rooted hearsay exception.
 
 See Roberts,
 
 448 U.S. at 66, 100 S.Ct. at 2539 (statements are admissible if they bear adequate “indicia of reliability”).
 

 Because Rostov’s statement was admissible under the declaration against interest exception, we need not determine whether it was also admissible under the residual exception to the hearsay rule. Fed.R.Evid. 804(b)(5).
 

 The district court has wide discretion in ruling on a motion for severance.
 
 United States v. Conners,
 
 825 F.2d 1384, 1391 (9th Cir.1987). We review the denial of a motion for severance for an abuse of discretion.
 
 Jenkins,
 
 785 F.2d at 1394. A person who seeks reversal of the denial of a severance motion has the burden of proving “clear,” “manifest,” or “undue” prejudice from a joint trial that violates a substantive right. The evidence of prejudice must demonstrate that the accused was denied a fair trial.
 
 Conners,
 
 825 F.2d at 1391.
 

 Most of the challenged statements were admitted only against Vultchev. Proper limiting instructions were given. Rostov’s statement regarding the keys was the only one of the challenged statements admitted against Candoli. We addressed the admissibility of each of the challenged statements because Candoli’s motion for a severance was based on the alleged “spillover” effect of this evidence on her defense in light of the fact that the government’s case connecting her to the alleged crimes was weaker than its proof against Vultchev.
 

 We addressed a similar “spillover” argument in
 
 Jenkins.
 
 There we stated, “[i]t is not enough that a separate trial might offer a defendant a better chance of acquittal, or that the prosecution’s case is stronger against a codefendant.”
 
 Jenkins,
 
 785 F.2d at 1394. Moreover, the defendant must show that the district court’s limiting instructions were insufficient for the jury to compartmentalize the evidence against each defendant.
 
 Id.
 

 In the instant matter, it was clear from the evidence that Candoli did not directly participate in the burning of Harold’s Place. The circumstantial evidence against her included proof that she prepared for the arson by dissolving the partnership, having a sale, purchasing insurance, and that she had an intimate relationship with Rostov. The evidence was sufficiently clear to permit the jury to segregate the testimony applicable to Candoli and to follow the limiting instructions of the district court. The district court did not err in denying Candoli’s motion for severance.
 

 H.
 
 Sufficiency of the Evidence
 

 Candoli contends that the evidence was insufficient to sustain her convictions for
 
 *511
 
 conspiracy, arson, and mail fraud. We review the evidence in the light most favorable to the prosecution to determine if “ ‘any rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt.’ ”
 
 Still,
 
 850 F.2d at 608 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).
 

 A conspiracy may be proven by circumstantial evidence.
 
 United States v. Disla,
 
 805 F.2d 1340, 1348 (9th Cir.1986). Once the existence of a conspiracy is established, only slight evidence of a defendant’s connection with it is necessary to convict her.
 
 United States v. Berberian,
 
 851 F.2d 236, 238 (9th Cir.1988). A defendant’s connection to the conspiracy may also be proved by circumstantial evidence.
 
 Id.
 

 Viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude beyond a reasonable doubt that a conspiracy existed and Candoli was part of it. The evidence indicated that the fire started inside Harold’s Place by someone who had access and knew how to deactivate the alarm. The fire was intentionally set with gasoline. With the exception of Harold’s Place, all the other fires were set in the common areas of the building with public access.
 

 The conspirators had a close association. Candoli was the owner of the store. Rostov was the general manager of the store. Candoli and Rostov were having an affair. Rostov and Candoli generally had the keys to Harold’s Place. Vultchev and Rostov were roommates. Vultchev frequently visited Harold’s Place. Rostov and Vultchev were stopped by police twelve days before the fire with gasoline and matches in the trunk of their car.
 

 The evidence also showed motive and preparation on Candoli’s part. Prior to the arson, Harold’s Place had been in a financial decline. Candoli was tired of the retail business. Candoli terminated her 50/50 partnership of eight years and became a sole proprietor. A few months prior to the fire the rent at Harold’s Place was increased to a point where she would have to double her annual sales in order to break even. Although Candoli had not carried insurance on Harold’s Place for some time, three weeks after she ended her partnership and a few months before the fire, she took out an insurance policy on Harold’s Place. Finally, prior to the fire, Candoli had a sale. She had never had a sale before. In addition, on her own initiative, she asked Rostov to return some goods that she held on consignment at Harold’s Place.
 

 This evidence was sufficient to convince a rational trier of fact of the existence of a conspiracy to commit arson and that Can-doli was a member. Furthermore, this evidence also demonstrated Candoli’s intent to defraud the insurance company. The evidence also showed that Candoli used the United States mails to collect the insurance proceeds. This evidence was sufficient to sustain Candoli’s conviction for mail fraud.
 
 See Schreiber Distributing Co. v. Serv-Well Furniture Co.,
 
 806 F.2d 1393, 1399-1400 (9th Cir.1986) (mail fraud is established where the evidence shows the defendants formed a scheme to defraud; the defendants used the United States mails in furtherance of the scheme; and the defendants did so with the specific intent to defraud).
 

 III.
 

 Conclusion
 

 Candoli’s conviction for attempted arson is Reversed. Candoli’s convictions for conspiracy, arson, and mail fraud are Affirmed.
 

 [1]
 

 . The flight instruction provided: The intentional flight or concealment of a defendant immediately after the commission of a crime or after he is accused of a crime that has been committed is not of course sufficient in itself to establish his guilt but is a fact which, if proved, may be considered by the jury in light of all other evidence in the case in determining guilt or innocence. Whether or not evidence of flight or concealment shows a consciousness of guilt and the significance to be attached to such evidence are matters exclusively within the province of the jury. In your consideration of the evidence of flight you should consider that there may be reasons for this which are fully consistent with innocence. These may include fear of being apprehended, unwillingness to confront the police or reluctance to appear as a witness. Let me suggest also that a feeling of guilt does not necessarily reflect actual guilt.